UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cr-126-DFH-KPF |
| | ) | |
| RANDY GELLINGER, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION TO SUPPRESS

After a search of his residence and computer, defendant Randy Gellinger
was indicted for possession of child pornography in violation of 18 U.S.C.
§ 2254(a)(4)(B). Gellinger has moved to suppress evidence obtained in the course
of the search. The court heard evidence on the motion on May 20, 2009. At the
end of the hearing, the court left the record open for possible supplementation
(including a further hearing) relating to the defendant's mental health. The
parties later indicated they did not seek to offer any further evidence and that the
court should decide the motion on the current record. Pursuant to Rule 12(d) of
the Federal Rules of Criminal Procedure, the court states its findings of fact and
conclusions of law.

The testimony of the investigating officers and defendant Gellinger and his
mother differed on numerous facts, though even the defense version on several of

the discrepancies would not necessarily require suppression of evidence.   In evaluating the credibility of the conflicting accounts, the court generally credits the officers' testimony more heavily than that of Mr. Gellinger and his mother, for reasons explained below.   The court denies the motion to suppress.

I.      *The Relevant Facts*

Officers from the federal Bureau of Immigration and Customs Enforcement (ICE) and the Indiana State Police investigated this case as part of the work of a task force investigating child exploitation crimes.   The investigating officers had received information indicating that a person using the name Randy Gellinger had purchased memberships for two known child pornography internet sites.   Whoever purchased the memberships had provided Gellinger's address in Cambridge City, Indiana.

At approximately 4:25 p.m. on September 20, 2007, a few minutes after Gellinger arrived home from work, several officers went to the home where he lived with his parents.   The officers included Michael Johnson and Thomas Rothrock of ICE and Detective Andy Beyers and Sergeant Chris Hunt of the Indiana State Police.   Johnson and Rothrock knocked at the front door and were greeted by Ronald Gellinger, Randy's father and the owner of the house.   Beyers and Hunt stayed out of sight at that time.

The ICE officers at the door told the older Mr. Gellinger that they were investigating information indicating that a Randy Gellinger at that address had purchased memberships in child pornography sites.  They asked to talk to Randy. Ronald Gellinger invited the officers into the house and into the kitchen, where Randy and his mother and father had been preparing to have supper.   The testimony conflicts on this point, but the court finds that the officers probably suggested that it would be best if they talked with Randy Gellinger without his parents being present, but that the officers did not actually order them to leave. In any event, Gellinger's parents left the kitchen.  Mrs. Gellinger retreated to a bedroom, and Ronald Gellinger to the living room or outside.

Officers Johnson and Rothrock then explained to Randy Gellinger the basis for their investigation:  the information indicating that someone with his name and personal data had bought memberships on two child pornography internet sites.  The evidence shows that the officers gave him oral and written advice of his *Miranda* rights, including the right to remain silent and the right to an attorney (including an appointed attorney) present for any questioning.   Gov't Ex. 1. Gellinger signed the written waiver of rights form and initialed each separate item on the form at 5:02 p.m.  The form was modified, with Gellinger's initials, to indicate that he was not in custody.

After signing and initialing the document, Gellinger told the officers that he had purchased a membership in a website called sickchildroom.com.  The officers

described the legal definition of child pornography.  Gellinger told them that he believed he had such material on his computer in the form of approximately 60 video files.  He asked whether that would make him "look bad."

The officers asked Gellinger if he would consent to a search of his computer. Gellinger gave that consent both orally and in writing at approximately 5:35 p.m. The officers explained the written consent form to Gellinger, and he then read it himself before signing it.  See Gov't Ex. 3.

On one disputed point, whether the officers threatened to seek a search warrant if Gellinger did not consent to the search, the court finds that they did not.  Gellinger's testimony is not entirely credible.  He felt he was under high stress.  His testimony denying having approved or understood the waiver forms he signed have undermined his credibility more generally.  The officers provided more credible, consistent, and reasonable testimony on this point.

After Gellinger consented to the search of his computer, Detective Beyers came into the house.  He and Officer Rothrock checked Gellinger's computer. Within just a few minutes, they located child pornography files that they considered contraband.  They told Gellinger of this and asked for consent to search the premises more extensively.  Gellinger signed a broader written consent to a search at 5:50 p.m.  Gov't Ex. 2.  The officers conducted a broader search of

his computer and room, and they left at about 7:00 p.m. with the computer and a number of computer storage media.  They did not arrest Gellinger that day.

During the interviews and searches on September 20th, the officers were wearing casual plain clothes, but they wore their badges and service weapons on their belts.  Voices were never raised in the interviews and searches.  The officers never told Gellinger that he was under arrest or was not free to leave, and he never asked to leave or otherwise raised the issue with them.  As noted, the written *Miranda* waiver form contains a handwritten change, initialed by Gellinger, stating that he was not in custody.  During the interviews and searches, Gellinger never asked to speak with an attorney or with his parents.  (The record does not reflect Gellinger's exact age, but he is a mature man of middle years with some noticeable gray in his hair.)

Gellinger testified that he felt threatened and intimidated during the initial interview in the kitchen, that he did not feel free not to talk with the officers, that he did not feel free to leave, and that the situation was very stressful for him. Gellinger also testified that Officer Johnson did not read the waiver of rights form to him (Gov't Ex. 1), and Gellinger denied having initialed each line of the waiver of rights form.  He denied that he understood the form and denied that he understood that he had a right to an attorney and a right not to answer questions. He also testified that he initially refused to consent to the search of his computer, but that Officer Johnson told him he would get a search warrant if it took all

night.  Gellinger's testimony on these points is not credible, apart from the point that the situation was very stressful for him.  In particular, the court finds that Gellinger's denials relating to the waiver of rights form are not credible, and they undermine the credibility of his testimony on other points where he and the officers disagreed.

Gellinger has a limited education.  He spent three years in the eighth grade and dropped out of school when he turned 16.  He likes to work, and since he dropped out of school, he has worked throughout his adult life in mechanical, factory, and maintenance jobs, and has managed restaurants and a truck stop.

Gellinger was arrested one week after the search of his computer, on September 27, 2007.  He and the officers agree, and the court finds, that he was advised of his *Miranda* rights.  He did not ask to speak to an attorney.  While in custody, he was shown several specific images and admitted they had been on his computer.

II.    *Interrogation Issues*

Gellinger contends that the September 20th interview in his kitchen violated his Fifth Amendment right because he was subjected to custodial interrogation without a valid waiver of his Fifth Amendment privilege against self-incrimination. The claim fails on two separate grounds.  First, Gellinger was not in custody when

he was being questioned in the kitchen.  Second, even if this were deemed custodial interrogation, Gellinger provided a valid waiver of his Fifth Amendment rights, both orally and in writing.

A.    *No "Custody"*

In general, a suspect is in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), if he is subject to "a restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Wyatt*, 179 F.3d 532, 535 (7th Cir. 1999), quoting *United States v. James*, 113 F.3d 721, 727 (7th Cir. 1997).

The inquiry into whether a suspect is in custody is objective.  The issue is whether, based on the totality of the circumstances, a reasonable person would have believed that he was free to leave. *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007); *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006), quoting *United States v. Lennick*, 917 F.2d 974, 977 (7th Cir. 1990).  The court considers such factors as whether the encounter occurred in a public place; whether the suspect consented to speak with the officers; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of several officers and a display of weapons or physical force; and whether the officers' tone of voice was such that their requests were likely to be obeyed. *Thompson*, 496 F.3d at 810; *Barker*, 467 F.3d at 629.

A person can be "in custody" for purposes of *Miranda* in his own home, see *Orozco v. Texas*, 394 U.S. 324, 326-27 (1969); *Sprosty v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996), but the location of this interview weighs against a finding of custody.  See *Thompson*, 496 F.3d at 811 (affirming finding that questioning in suspect's home was not in custody).  In fact this case bears a striking resemblance to *Thompson*, where the suspect invited the agents into his home and agreed to be questioned, and where the agents did not physically restrain the suspect, raise their voices, or display weapons in an intimidating manner.  There also was no evidence of "coercion or subterfuge."  That description fits this case.  Under these circumstances, the kitchen interview with Gellinger did not amount to a custodial interrogation requiring a valid waiver of *Miranda* rights.

B.    *Waiver*

Even if the kitchen interview were deemed custodial, the officers secured a valid waiver of Gellinger's Fifth Amendment privilege when they reviewed Government Exhibit 1, the waiver of rights form, with him and he signed and initialed it.  Gellinger's later denials that he understood or that he agreed voluntarily are not credible or persuasive.  There is no reason to suppress the statements Gellinger made during the kitchen interview on September 20th.

C.    *Interrogation After Arrest*

On September 27, 2007, Gellinger was subjected to custodial interrogation after his arrest.  In that interrogation, the officers confronted Gellinger with several of the video and other computer files found on his computer, and he admitted that some of them were in fact on his computer.  Gellinger has not shown that the results of this interrogation should be suppressed.  The officers and Gellinger agreed that he was given his proper *Miranda* warnings before the interrogation.  There is no other apparent basis for suppressing his statements during that interrogation after his waiver of his Fifth Amendment and related rights.

III.   *Search Issues*

The officers did not have a search warrant for Gellinger's computer, room, or home when they visited on September 20, 2007.  The only basis for a lawful search under those circumstances was voluntary consent to a search.  See *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992).  Whether consent is given voluntarily depends on "the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *United States v. Johnson*, 495 F.3d 536, 541 (7th Cir. 2007).  The government bears the burden of showing voluntariness by a preponderance of the evidence.  *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).  Relevant factors include (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave consent; (4) whether his consent was immediate or was prompted by repeated requests; (5) whether physical coercion was used; and (6) whether the person was in police custody when he gave consent.  *Johnson*, 495 F.3d at 542.

Gellinger signed written forms consenting to the searches, first of his computer and then more generally of his room.  The court finds no persuasive reason to invalidate the written consents to search that Gellinger signed.  Gellinger's limited education does not undermine the voluntariness of the consent.  He has worked in a range of jobs requiring a host of skills and significant

responsibility, including management of businesses.  He is mature.  He was advised of his constitutional rights.  He was not being detained when he gave consent, and the consent appears to have been fairly prompt, without repeated requests.  There is no indication of physical coercion, and Gellinger was not in custody.  The officers acted within the scope of those consents, and there was no violation of Gellinger's Fourth Amendment rights.

The defense suggests that the officers acted improperly by obtaining consent by threatening to obtain a search warrant.  See, *e.g.*, *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992) (baseless threats to obtain a search warrant may render consent involuntary, but threats to do so when supported by reasonable expectation of probable cause do not).  The court finds as a matter of fact that no such threat was made in this case.  Even if it had been, however, such a threat would not have been improper in this case, at least after Gellinger had told the officers in the kitchen that his computer would probably have child pornography on it.  Without addressing whether the officers' information before they arrived at the door would have supported a search warrant, the court believes it is clear that the officers had probable cause and easily could have obtained a search warrant for the computer and related storage media in the home if Gellinger had refused to consent to the search.  By that time, Gellinger had told the officers that he had in fact signed up for the child pornography websites and that he probably had child pornography on his computer.

Accordingly, the defendant's motion to suppress is hereby denied.  The case remains set for a court trial on July 13, 2009.  The court has previously stated that the time to the new trial date is excluded for purposes of the Speedy Trial Act, 18 U.S.C. § 3161 et seq.  From late 2007 to late 2008, the court continued the trial eight times on motions by Gellinger, and he then filed a petition to enter a plea of guilty.  On the date set for his change of plea hearing and sentencing, Gellinger withdrew his plea of guilty, and the case was again set for trial on June 11, 2009.  Gellinger then filed his motion to suppress, which the court heard on May 20, 2009 and denies today.  Because of the pending motion and a conflict with another criminal case, the court continued the scheduled the trial to July 13, 2009.  The court finds that the further delay to July 13, 2009 was in the interests of justice to ensure that the defendant's motion to suppress could be considered fully, and that the time to the July 13th trial date should be excluded from consideration under the Speedy Trial Act.

So ordered.

Date: June 12, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE
steve.debrota@usdoj.gov

William E. Marsh
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.marsh@fd.org

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov